IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION


JOSHUA A. YOUNG,

        Plaintiff,

v.                                   CIVIL ACTION NO.  2:19-cv-00829

CORPORAL ARTHUR MUNCY, et al.,

        Defendants.


MEMORANDUM AND OPINION ORDER

Pending before the court are Defendants Muncy's and Thompson's Motions to Dismiss [ECF Nos. 16, 28]. For the reasons that follow, the Motions are **GRANTED in part** and **DENIED in part**.

I.     Background

Plaintiff Joshua A. Young brought the current action against Defendant Arthur Muncy, a correctional officer of the rank of Corporal at South Central Reginal Jail and Correctional Facility ("South Central"), and Defendant Ronnie Thompson, a correctional officer of the rank of Captain at South Central. At the time of the incident at issue, Plaintiff Joshua A. Young was a thirty-seven year old, pretrial detainee held at South Central in Charleston, West Virginia. Plaintiff is no longer incarcerated.

According to the Complaint, on April 25, 2018, while incarcerated at South Central as a pretrial detainee, Plaintiff was subjected to a sexual assault by

1

Defendant Muncy. Defendant Muncy, angry at the inmates of Pod C4, including Plaintiff, entered Plaintiff's cell without another officer, in violation of protocol. While in Plaintiff's cell, Defendant Muncy allegedly backed Plaintiff against the wall, grabbed his genitals, and squeezed extremely forcefully. Defendant Muncy told Plaintiff that if he had any more trouble from him, he would rip off Plaintiff's penis and "fuck" Plaintiff in his "ass" with it. Defendant Muncy then made additional sexually assaultive statements, including that if he could, he would have Plaintiff and others transferred to general population, where they would "all get fucked," and referring to Plaintiff and others as "PC whores."

Thereafter, Plaintiff was left in excruciating pain. Plaintiff, who was locked in his cell, hit the emergency call button over and over, seeking to summon assistance from an officer or nurse. After approximately an hour, a correctional officer came through Plaintiff's pod to do a routine check, and Plaintiff told the guard he wanted to file a Prison Rape Elimination Act ("PREA") complaint. Plaintiff was provided with a form and taken to meet with a lieutenant at South Central, who questioned him about the incident and accepted his PREA complaint. At no time was Plaintiff provided a way to report the abuse and harassment to an entity that was not part of the West Virginia Division of Corrections and Rehabilitation ("WVDCR"), in violation of PREA. Plaintiff was not provided with contact information for outside victim advocates for emotional support services, in violation of PREA. Plaintiff's PREA report was also not provided to the agency PREA coordinator, as required by the

2

Department of Military Affairs and Public Safety ("DMAPS") policy, and no investigation was initiated by the DMAPS Investigations Unit.

For days after the alleged incident, Plaintiff heard nothing further regarding his PREA complaint. Finally, Defendant Thompson summoned Plaintiff to his office and informed Plaintiff that he had investigated the allegation, determined that it was unfounded, and threatened Plaintiff that if he continued to "lie" about what happened, he would face disciplinary sanctions. When Plaintiff protested, Defendant Thompson informed him that no further investigation would be done. Despite knowing that Defendant Muncy was aware of Plaintiff's allegations, Defendant Thompson continued to allow Defendant Muncy to work on Plaintiff's pod.

Defendant Muncy harassed Plaintiff in retaliation for his PREA complaint. He told Plaintiff the only thing filing the PREA complaint did was "make your time here a lot harder." Defendant Muncy harassed Plaintiff in the following ways:

(a) Directing Plaintiff to pack all his belongings and then transporting him to an interview room, where he left Plaintiff overnight with no explanation, until a new shift of officers arrived, who then returned him to his cell;
(b) Approaching Plaintiff while he was showering and demanding he exit the shower with no cause, creating great apprehension for Plaintiff; and
(c) Grabbing Plaintiff by the arm and twisting it painfully behind his back without justification.

On or around May 31, 2018, Plaintiff filed a grievance through South Central's grievance system, reporting that Defendant Muncy was continuing to harass him and had put his hands on him two times that week. Plaintiff requested Defendant Muncy be kept away from him. That grievance was not responded to until July 7, 2018, at which point Defendant Thompson stated that "this has already been addressed with

you," apparently in reference to the PREA complaint. Defendant Thompson did not take steps to protect Plaintiff from retaliation by Defendant Muncy.

As a result of the injury to his genitals, Plaintiff continues to suffer testicular pain. Five days after the incident, Plaintiff was seen by a psychologist who noted he was depressed, anxious, and restless during the appointment. On or about August 9, 2018, Plaintiff was seen by a urologist at Charleston Area Medical Center ("CAMC") who diagnosed Plaintiff with "chronic testicular pain that is likely a cord spasm and nerve related pain from trauma." The physician told Plaintiff the pain would likely be permanent and that the only potential cure would be to amputate Plaintiff's testicles. To treat the ongoing pain, the physician prescribed Gabapentin. Afterwards, Plaintiff was provided his prescription for Gabapentin by South Central for a total of only three days, resulting in Plaintiff's testicular pain to continue. Plaintiff's pain increases if he engages in physical activities. Plaintiff is unable to sustain an erection.

On November 22, 2019, Plaintiff filed the instant Complaint alleging the following claims: (Count I) 42 U.S.C. § 1983 Excessive Force Claim; (Count II) Intentional Infliction of Emotional Distress; and (Count III) Assault and Battery. Defendant Muncy filed a Motion to Dismiss on February 12, and Defendant Thompson filed a Motion to Dismiss on March 2. I will address both motions now.

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the

factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D.W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Id.*

III. Discussion

a) Exhaustion of Administrative Remedies

Defendants first argue Plaintiff's Complaint should be dismissed because he did not exhaust his administrative remedies as required under the Prison Reform Litigation Act ("PLRA") and the similar West Virginia Prison Litigation Reform Act ("WVPLRA"). "Failure to exhaust available administrative remedies is an affirmative defense, not a jurisdictional requirement, and thus inmates need not plead

exhaustion, nor do they bear the burden of proving it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Once a prisoner has been released from custody, the PLRA no longer applies. *See e.g.*, *Cofield v. Bowser*, 247 F. App'x 413, 414 (4th Cir. 2007) ("Because Cofield was not a prisoner when he filed his complaint, the PLRA exhaustion requirement is not applicable to his § 1983 action."). Similarly, the WVPLRA applies to "inmates," defined as anyone "confined in a correctional facility." *See* W. Va. Code § 25-1A-1(c). Here, it is uncontested that Plaintiff was no longer an inmate when he filed his action. Therefore, PLRA and WVPLRA exhaustion requirements do not apply.[1]

Even assuming, arguendo, that exhaustion requirements would apply, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. The Supreme Court has held that administrative remedies are considered unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016).

---

[1] To the extent that Plaintiff argued WVPLRA does not require an inmate to exhaust administrative remedies for allegations of "violence, sexual assault or sexual abuse against an inmate," Plaintiff is incorrect. In 2013, the WVPLRA statute was amended to say "no inmate shall be prevented from…bringing a civil or criminal action alleging violence, sexual assault[,] or sexual abuse, *after exhaustion of administrative remedies*." W. Va. Code § 25-1A-2a(i) (emphasis added). Therefore, exhaustion is required for all inmates. *See e.g., Miller v. Rubenstein*, No. 2:16-CV-05637, 2018 WL 736044, at *6–7 (S.D.W. Va. Feb. 6, 2018); *Baker v. Hammons*, No. 2:15-CV-13849, 2016 WL 538481, at *2 (S.D.W. Va. Feb. 9, 2016).

Here, Plaintiff argues he "did grieve the sexual assault incident upon moving to a different facility, as provided for by the West Virginia Division of Corrections grievance policy." Pl.'s Resp. [ECF No. 27] 8. Further, the Complaint alleges Defendant Thompson threatened Plaintiff with disciplinary action if he attempted to pursue a grievance on the assault or subsequent harassment by Defendant Muncy. *See Jones v. United States*, 698 F. App'x 536, 537 (9th Cir. 2017) ("The threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable."). Defendant Thompson also told Defendant Muncy that no further investigation would be done. *See Dockery v. Maidrans*, No. 3:16-CV-2123, 2018 WL 1726634, at *4 (M.D. Pa. Apr. 10, 2018) (finding administrative remedies unavailable where prison officials refused to file plaintiffs' grievances regarding their coworkers). Therefore, at this stage, Defendants have not met their burden in demonstrating that the administrative process was available to Plaintiff.

### b) Count I, 42 U.S.C. § 1983 Excessive Force Claim

In Count I, Plaintiff alleges a § 1983 Excessive Force Claim. Defendants argue they are entitled to qualified immunity. When addressing an excessive force claim under § 1983, I must identify the constitutional right infringed upon and then determine whether that right was clearly established at the time of the alleged conduct. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Williamson v. Stirling*, 912 F.3d 154, 186 (4th Cir. 2018).

7

## i. Defendant Muncy

"[I]t is well established that the Due Process Clause of the Fourteenth Amendment 'protects a pretrial detainee from the use of excessive force that amounts to punishment,' and is not 'an incident of some other legitimate governmental purpose.'" *Duff v. Potter*, 665 F. App'x 242, 244 (4th Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). "Sexual assault is 'not a legitimate part of a prisoner's punishment, and the substantial physical and emotional harm suffered by a victim of such abuse are compensable injuries' under § 1983." *Wolfe v. Cooper*, No. CA808CV869PMDBHH, 2009 WL 2929438, at *3 (D.S.C. Sept. 2, 2009) (citing *Berryhill v. Schriro,* 137 F.3d 1073, 1076 (8th Cir.1998)). "[M]ost importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

"The appropriate standard for a pretrial detainee's excessive force claim is solely an objective one."[2] *Dilworth v. Adams*, 841 F.3d 246, 255 (4th Cir. 2016) (quoting *Kingsley*, 135 S. Ct. at 2473). A pretrial detainee must demonstrate only that the "force purposely or knowingly used against him was objectively unreasonable," considering the "facts and circumstances of each particular case" and "what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*,

---

[2] A pretrial detainee's excessive force claim is different than an inmate's Eighth Amendment cruel and unusual punishment claim. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). A prison inmate's Eighth Amendment excessive force claim involves both an objective and a subjective component, whereas a pretrial detainee's excessive force claim is governed only by an objective standard. *Id.*

135 S. Ct. at 2473. Courts may consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Beale v. Madigan*, 668 F. App'x 448, 449 (4th Cir. 2016) (citing *id.*).

In taking the allegations in the Complaint as true, I have little trouble in concluding it is objectively unreasonable for a correctional officer, such as Defendant Muncy, to forcibly grab an inmate's genitals and squeeze while threatening to rape the inmate. Plaintiff was alone in his cell when the alleged incident occurred, and there are no facts that any force was needed at all. The physician at CAMC said the pain Plaintiff is enduring will likely be permanent, and the only potential cure would be to amputate Plaintiff's testicles. Sexual assault is not a legitimate part of a prisoner's punishment, particularly here, where Plaintiff is a pretrial detainee who "cannot be punished at all, much less 'maliciously and sadistically.'" *See Kingsley*, 135 S. Ct. at 2473.

Furthermore, the "right of prisoners to be free from sexual abuse was unquestionably clearly established prior to the time of this alleged assault, and no reasonable prison guard could possibly have believed otherwise." *See e.g.*, *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000); *Ullery v. Bradley*, 949 F.3d 1282, 1298 (10th Cir. 2020) (analyzing case law from the second, third, sixth, seventh, eighth, and ninth circuits and concluding that an inmate's right to be free from sexual

abuse by an officer was clearly established by 2015). "Because controlling authority clearly establishes an inmate's right to reasonable protection from malicious assault, [I] look no further and conclude [Plaintiff's] right was clearly established in this case." *See Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 110 (4th Cir. 2017). Therefore, I **DENY** Defendant Muncy's Motion to Dismiss Count I.

## ii. Defendant Thompson

Plaintiff alleges Defendant Thompson is liable under supervisory liability for Plaintiff's constitutional claims.

"The principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). "There is, however, no respondeat superior liability pursuant to 42 U.S.C. § 1983." *Berry v. Rubenstien*, No. 1:07-00535, 2008 WL 1899907, at *2 (S.D. W. Va. Apr. 25, 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Instead, "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights' or where a subordinate acts pursuant to a policy or custom for which the supervisor is responsible." *Id.* (internal quotations removed).

There are three elements necessary to establish supervisory liability:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the

plaintiff.

*Shaw*, 13 F.3d at 799.

In order to establish the first element, the plaintiff must show "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.*

The plaintiff can establish deliberate indifference in the second element "by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.* (citations omitted). The plaintiff assumes a "heavy burden of proof" because the plaintiff "cannot satisfy his burden [] by pointing to a single incident or isolated incidents." *Id.*

The third element is established "when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Id.* (citations omitted). Causation in this context encompasses both cause in fact and proximate cause. *Id.*

Here, Plaintiff has not pleaded sufficient facts to establish supervisory liability for Defendant Thompson. Plaintiff merely makes a conclusory allegation that "Defendant Thompson knew, or had reason to know, of Defendant Muncy's propensity to assault inmates, but permitted such behavior to proceed unchecked." Compl. [ECF

No. 2] ¶ 77. Plaintiff has not stated specific facts that Defendant Thompson had knowledge that Defendant Muncy "was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff." *Shaw*, 13 F.3d at 799. Nor has Plaintiff demonstrated that Defendant Muncy's conduct was "widespread, or at least has been used on several different occasions." *See id.*; *see also Thompson*, 878 F.3d at 111 (affirming summary judgment dismissal of supervisory liability where plaintiff "only makes conclusory allegations without any specific facts that these defendants had knowledge that retaliation was taking place and that they acquiesced in the retaliatory acts").

In addition, an alleged failure of Defendant Thompson to investigate Plaintiff's grievance is not enough to establish supervisory liability. *See Green v. Beck*, 539 F. App'x 78, 81 (4th Cir. 2013) (finding an alleged failure of supervisory officials to investigate grievances was not sufficient to establish liability under § 1983). Plaintiff has not stated that an additional sexual assault occurred after reporting the alleged incident to Defendant Thompson. Therefore, Defendant Thompson's Motion to Dismiss as to Count I is **GRANTED**.

### c) Count II, Intentional Infliction of Emotional Distress

Plaintiff next pleads a claim for Intentional Infliction of Emotional Distress ("IIED"). To prevail on an IIED claim under West Virginia law, a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer

emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Murray v. Lilly*, No. CV 2:18-CV-00942, 2019 WL 4733552, at *7 (S.D.W. Va. Sept. 26, 2019).

These elements present a high bar to recovery. *See Courtney v. Courtney*, 413 S.E.2d 418, 423 (W. Va. 1991) ("conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct."). In analyzing the first factor, a court can "consider whether the extreme and outrageous character of the conduct arose from an abuse by the defendant of a position or relationship to the plaintiff, which gave the defendant actual or apparent authority over the plaintiff or power to affect the plaintiff's interests." *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998).

### i. Defendant Muncy

In West Virginia, an IIED claim which is duplicitous with an assault and battery claim cannot go forward. *See Criss v. Criss*, 356 S.E.2d 620 (W. Va. 1987) ("[I]f a jury finds that the proof sustains the appellant's complaint, she will be able to recover compensatory and punitive damages against the appellee as a result of the assault and battery, including elements of emotional distress. Therefore, it would be inappropriate to allow her to also recover damages based on the tort of IIED."). IIED "was conceived as a remedy for tortious conduct where no remedy previously existed." *Compton v. O'Bryan*, No. 2:16-CV-09298, 2018 WL 813443, at *5 (S.D.W. Va. Feb. 9, 2018). And at "the outset of a case, an assault claim encompasses claims for IIED

arising out of the assault, such that a plaintiff may present his claim for intentional infliction of emotional distress as a part of his assault claim." *Id.* Therefore, to the extent that Plaintiff pleads an IIED claim for Defendant Muncy's actions which form the basis of his assault and battery claim, Defendant Muncy's Motion is **GRANTED**.

To the extent that Plaintiff's IIED claim arises from events after the underlying assault and battery claim, it is not barred by *Criss. See Settle v. Hall*, No. CIV.A. 2:11-00307, 2012 WL 1831845, at *2 (S.D.W. Va. May 18, 2012) ("To the extent plaintiffs would assert that the March 25, 2010, assault and battery by defendants also amounted to the intentional infliction of emotional distress, the latter claim is barred by *Criss.*"). However, looking only at the actions occurring after the alleged sexual assault and battery of Plaintiff, Plaintiff has not stated a claim for IIED. Though grabbing Plaintiff's arm, demanding he leave the shower, and transporting him to stay in an interview room overnight is certainly annoying and harmful conduct, "conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct." *Murray*, No. CV 2:18-CV-00942, 2019 WL 4733552, at *8. Plaintiff has not alleged actions that are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Tomashek v. Raleigh Cty. Emergency Operating Ctr.*, No. 2:17-CV-01904, 2018 WL 502752, at *4–5 (S.D.W. Va. Jan. 22, 2018). Therefore, I **GRANT** Defendant Muncy's Motion to Dismiss Count II's IIED claim.

### ii. Defendant Thompson

Plaintiff also brings an IIED claim against Defendant Thompson. To support this claim, Plaintiff asserts that Defendant Thompson (1) did not adequately investigate Plaintiff's PREA complaint against Officer Muncy; (2) told Plaintiff that filing unfounded PREA claims can result in discipline; and (3) permitted Defendant Muncy to continue working the housing pod where Plaintiff was assigned. These actions do not rise to the level of "extreme and outrageous" conduct to satisfy an IIED claim. Therefore, Defendant Thompson's Motion to Dismiss Count II is **GRANTED.**

### d) Count III, Assault and Battery

Plaintiff also brings an assault and battery claim against Defendant Muncy.

In West Virginia, a person is liable for battery if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 776 (S.D.W. Va. 2015) (quoting Restatement (Second) of Torts § 13 (1965)). A person is liable for assault if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *Id.*

Here, Defendant Muncy is alleged to have intentionally grabbed and squeezed Plaintiff's genitals without justification and threatened Plaintiff with anal rape. I find Plaintiff has pleaded sufficient facts to state a claim for assault and battery. Defendant Muncy's Motion to Dismiss Count III is **DENIED**.

As to Defendant Thompson, Plaintiff "voluntarily withdraws his claim for assault against Defendant Thompson." Pl.'s Resp. [ECF No. 30] 15. Therefore, Defendant Thompson's Motion to Dismiss Count III is **GRANTED** as **MOOT**.

IV.     Conclusion

For the reasons stated herein, Defendants Muncy's and Thompson's Motions to Dismiss, [ECF Nos. 16, 28], are **GRANTED in part** and **DENIED in part**. Defendant Thompson's Motion to Dismiss is **GRANTED**. [ECF No. 28]. Defendant Muncy's Motion to Dismiss is **GRANTED** as to Count II and **DENIED** as to Counts I and III. [ECF No. 16]. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      March 30, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE