IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOSHUA A. YOUNG,

               Plaintiff,

v.                                CIVIL ACTION NO.  2:19-cv-00829

CORPORAL ARTHUR MUNCY, et al.,

               Defendants.


MEMORANDUM AND OPINION ORDER

Pending before the court are Defendant Arthur Muncy's Motion to Dismiss Count II of First Amended Complaint, [ECF No. 38], and Defendant Ronnie Thompson's Motion to Dismiss First Amended Complaint, [ECF No. 43]. I previously dismissed Count II by virtue of this court's order on March 30, 2020. [ECF No. 36]. Accordingly, Defendant Muncy's Motion to Dismiss Count II is **DENIED AS MOOT**. [ECF No. 38]. For the reasons that follow, Defendant Thompson's Motion to Dismiss is **DENIED**. [ECF No. 43].

I.     **Background**

Plaintiff Joshua A. Young brought the current action against Defendant Arthur Muncy, a correctional officer of the rank of Corporal at South Central Reginal Jail and Correctional Facility ("South Central"), and Defendant Ronnie Thompson, a

correctional officer of the rank of Captain at South Central.[1] At the time of the incident at issue, Plaintiff Joshua A. Young was a thirty-seven year old, pretrial detainee held at South Central in Charleston, West Virginia. Plaintiff is no longer incarcerated.

According to the Complaint, on April 25, 2018, while incarcerated at South Central as a pretrial detainee, Plaintiff was subjected to a sexual assault by Defendant Muncy. Defendant Muncy, angry at the inmates of Pod C4, including Plaintiff, entered Plaintiff's cell without another officer, in violation of protocol. While in Plaintiff's cell, Defendant Muncy allegedly backed Plaintiff against the wall, grabbed his genitals, and squeezed extremely forcefully. Defendant Muncy told Plaintiff that if he had any more trouble from him, he would rip off Plaintiff's penis and "fuck" Plaintiff in his "ass" with it. Defendant Muncy then made additional sexually assaultive statements, including that if he could, he would have Plaintiff and others transferred to general population, where they would "all get fucked," and referring to Plaintiff and others as "PC whores."

Thereafter, the Complaint alleges Plaintiff was left in excruciating pain. Plaintiff, who was locked in his cell, hit the emergency call button over and over, seeking to summon assistance from an officer or nurse. After approximately an hour, a correctional officer came through Plaintiff's pod to do a routine check, and Plaintiff

---

[1] Defendant Thompson states in his Reply that since the time of Plaintiff's Complaint, he has been promoted to the rank of Major. Reply [ECF No. 50] n.1. However, because this is the motion to dismiss stage where I take all of the allegations in the Complaint as true, I will refer to him as the Complaint alleged.

told the guard he wanted to file a Prison Rape Elimination Act ("PREA") complaint. Plaintiff was provided a form and taken to meet with a lieutenant at South Central, who questioned him about the incident and accepted his PREA complaint. At no time was Plaintiff provided a way to report the abuse and harassment to an entity that was not part of the West Virginia Division of Corrections and Rehabilitation ("WVDCR"), in violation of PREA. Plaintiff was not provided with contact information for outside victim advocates for emotional support services, in violation of PREA. Plaintiff's PREA report was also not provided to the agency PREA coordinator, as required by the Department of Military Affairs and Public Safety ("DMAPS") policy, and no investigation was initiated by the DMAPS Investigations Unit.

For days after the alleged incident, Plaintiff heard nothing further regarding his PREA complaint. Finally, according to the Complaint, Defendant Thompson summoned Plaintiff to his office and informed Plaintiff that he had investigated the allegation, determined that it was unfounded, and threatened Plaintiff that if he continued to "lie" about what happened, he would face disciplinary sanctions. When Plaintiff protested, Defendant Thompson informed him that no further investigation would be done. Despite knowing that Defendant Muncy was aware of Plaintiff's allegations, Defendant Thompson continued to allow Defendant Muncy to work on Plaintiff's pod.

The Complaint alleges that Defendant Muncy harassed Plaintiff in retaliation for his PREA complaint. He told Plaintiff the only thing filing the PREA complaint

did was "make your time here a lot harder." Defendant Muncy harassed Plaintiff in the following ways:

> (a) Directing Plaintiff to pack all his belongings and then transporting him to an interview room, where he left Plaintiff overnight with no explanation, until a new shift of officers arrived, who then returned him to his cell;
> (b) Approaching Plaintiff while he was showering and demanding he exit the shower with no cause, creating great apprehension for Plaintiff; and
> (c) Grabbing Plaintiff by the arm and twisting it painfully behind his back without justification.

On or around May 31, 2018, Plaintiff filed a grievance through South Central's grievance system, reporting that Defendant Muncy was continuing to harass him and had put his hands on him two times that week. Plaintiff requested Defendant Muncy be kept away from him. That grievance was not responded to until July 7, 2018, at which point Defendant Thompson, as alleged, stated "this has already been addressed with you," apparently in reference to the PREA complaint. Defendant Thompson did not take steps to protect Plaintiff from retaliation by Defendant Muncy.

As a result of the injury to his genitals, Plaintiff continues to suffer testicular pain. Five days after the incident, Plaintiff was seen by a psychologist who noted he was depressed, anxious, and restless during the appointment. On or about August 9, 2018, Plaintiff was seen by a urologist at Charleston Area Medical Center ("CAMC") who diagnosed Plaintiff with "chronic testicular pain that is likely a cord spasm and nerve related pain from trauma." The physician told Plaintiff the pain would likely be permanent and that the only potential cure would be to amputate Plaintiff's testicles. To treat the ongoing pain, the physician prescribed Gabapentin. Afterwards,

4

Plaintiff was provided his prescription for Gabapentin by South Central for a total of only three days, resulting in Plaintiff's testicular pain to continue. Plaintiff's pain increases if he engages in physical activities. Plaintiff is unable to sustain an erection.

On November 22, 2019, Plaintiff filed the instant Complaint alleging the following claims: (Count I) 42 U.S.C. § 1983 Excessive Force Claim; (Count II) Intentional Infliction of Emotional Distress; and (Count III) Assault and Battery. Defendant Muncy filed a Motion to Dismiss on February 12, [ECF No. 16], and Defendant Thompson filed a Motion to Dismiss on March 2. [ECF No. 28]. On March 30, 2020, I dismissed Count II in its entirety and dismissed Count I solely as to Defendant Thompson. [ECF No. 36]. Plaintiff amended his complaint to add Count IV, 42 U.S.C. § 1983 retaliation under the First Amendment, against both defendants. [ECF No. 39]. As it relates to Counts I-III, Plaintiff's First Amended Complaint is the same as Plaintiff's original Complaint. [ECF No. 2]. To clarify, Counts I, III, and IV remain pending against Defendant Muncy, and Count IV remains pending against Defendant Thompson. Defendant Muncy filed a Motion to Dismiss Count II, which is denied as moot. [ECF No. 38]. The only issue for the court to address here is Defendant Thompson's motion to dismiss Count IV retaliation under the First Amendment. [ECF No. 43].

## II.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the

factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D.W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Id.*

## III.  Discussion

In Count IV, Plaintiff brings a retaliation claim in violation of the First Amendment of the United States under 42 U.S.C. § 1983. To state a claim for retaliation under § 1983, Plaintiff must allege "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017).

6

In this case, Plaintiff argues Defendant Thompson violated his constitutional right under the First Amendment to petition the government when Defendant Thompson "threatened Plaintiff that if he continued to 'lie' about what happened"— as in continue to pursue his allegations against Defendant Muncy—"he would face disciplinary sanctions." First Amended Compl. ¶ 42 [ECF No. 39]. Specifically, according to the Complaint,

> Defendant Thompson threatened Plaintiff with disciplinary action if he appealed or otherwise pursued his PREA complaint, and later threatened Plaintiff again when Plaintiff attempted to file a grievance related to Defendant Muncy's acts of retaliation; moreover, Defendant Thompson continued to station Defendant Muncy on Plaintiff's unit, enabling Defendant Muncy's ongoing retaliatory acts against Plaintiff; in so doing, Defendant Thompson retaliated against Plaintiff and prevented Plaintiff from exercising his protected speech.

*Id.* at ¶ 104. "As a result, Plaintiff abstained from appealing his PREA complaint and/or filing grievances regarding the incident, and was subjected to further harassment by Corporal Muncy." Pl.'s Resp. [ECF No. 49] 2.

Plaintiff easily meets the first element. When he filed his PREA complaint about Defendant Muncy's sexual assault and subsequent grievance seeking to prevent Defendant Muncy from further harassing him, he engaged in protected First Amendment activity. *See Martin* 858 F.3d at 249 ("Prisoners retain the constitutional right to petition the government for the redress of grievances."); *Hoye v. Gilmore*, 691 F. App'x 764, 765 (4th Cir. 2017) ("[P]risoners have a constitutional right to file prison grievances free from retaliation.").

7

The second element, whether the defendant took adverse action that affected Plaintiff's First Amendment rights, is met when "the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin*, 858 F.3d at 249 (internal quotations removed). In addition, a plaintiff's "'actual response to the retaliatory conduct' is not dispositive of the question of whether such action would likely deter a person of ordinary firmness." *Id.* Here, Plaintiff alleges Defendant Thompson threatened Plaintiff "with disciplinary action if he appealed or otherwise pursued his PREA complaint, and later threatened Plaintiff again when Plaintiff attempted to file a grievance related to Defendant Muncy's acts of retaliation." First Amended Compl. ¶ 104 [ECF No. 39]. At this stage, in taking Plaintiff's allegations as true, I find the threat of disciplinary action by Defendant Thomas could deter a person of "ordinary firmness" from exercising his First Amendment rights to pursue a prisoner grievance. *See Martin*, 858 F.3d at 249; *see also Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."); *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir.1994) ("[A] threat of retaliation is sufficient injury if made in retaliation for an inmate's use of prison grievance procedures.").

As for the third element, the causal relationship between Plaintiff's protected activity and Defendant's conduct, Plaintiff has alleged that Defendant Thompson threatened him with discipline if he, Plaintiff Young, attempted to further pursue his sexual assault allegations against Defendant Muncy. The retaliatory conduct by

8

Defendant Thompson directly caused Plaintiff to abandon continuing to petition the government for redress. Thus, I find that Defendant Thompson's threats of discipline are causally linked to Plaintiff's protected First Amendment activity—pursuing his PREA complaint. Accordingly, I find Plaintiff has sufficiently pled the third element. *See Roscoe v. Kiser*, No. 7:18-CV-00319, 2019 WL 6270240, at *8 (W.D. Va. Nov. 22, 2019) ("Courts can infer causation when the adverse action occurs shortly after a plaintiff engaged in a protected activity.").

I find Plaintiff has alleged a prima facie claim of First Amendment retaliation. Defendant Thompson's motion to dismiss Count IV is **DENIED**.

## IV.    Conclusion

For the reasons stated herein, Defendant Muncy's Motion to Dismiss Count II is **DENIED AS MOOT**, [ECF No. 38], and Defendant Thompson's Motion to Dismiss is **DENIED**. [ECF No. 43].

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      June 19, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

9